THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC WILLIAMS, Defendant-Appellant.

First District (5th Division)   No. 85—0746

Opinion filed April 8, 1988.—Rehearing denied April 29, 1988.

Emory, Andrew, Tate & Associates, Ltd., of Skokie (Martin Tiersky, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Paula M. Carstensen, and Diane M. Dickett, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

Following a jury trial, defendant, Eric Williams, was found guilty of the attempted murder of Twone Hill, and he was sentenced to 18 years' imprisonment.

On appeal the defendant urges that the evidence failed to establish his guilt beyond a reasonable doubt, that it was reversible error for the State's witnesses and the prosecutor to refer to the defendant by his nickname, "Snake," that the trial court erred in submitting to the jury Illinois Pattern Jury Instructions, Criminal, No. 24—25.09 (2d ed. 1981), which applies to an initial aggressor's use of force, and that his 18 years' imprisonment sentence is excessive. We affirm.

At trial, the victim, Twone Hill, testified that on June 5, 1984, she walked westerly with two friends from school toward a local bus stop. Hill noticed two boys on bicycles in a nearby alley talking to a group of three or four other boys who were approaching on foot. Although Hill did not see any weapons in the hands of the boys on foot, she did see a shiny object in the hand of one of the two boys who were on bicycles. She began to cross the street to avoid any danger. As Hill reached the middle of the street, she heard three or four gunshots. Hill stumbled to the parking lot of a nearby fast-food restaurant, where she fell with a gunshot wound to her side.

Leon Jones testified that on the date of the shooting, he, Charles Catchings, Preston Baker and Darren Jones, all co-workers at a real estate company, met with Eugene Perkins and went to a convenience store for lunch. There they encountered the defendant, Eric Williams, and Leon Jones' brother, Eldridge Hardy, who was seated on a bicycle. Leon Jones knew that the defendant was a member of a street gang called the "Black Gangster Disciples" because the defendant wore a baseball cap with the bill turned to the right side of his head, and the defendant had a tattoo on his body of two pitchforks crossed with a "T," a "G," and a broken number "6." Leon Jones was a former Black Gangster Disciple and he further explained that west of the high school that Hill attended was territory occupied by the Black Gangster Disciples and east of the high school was territory of a rival street gang, the "Stones."

Leon Jones further testified that at the convenience store, defendant Eric Williams complained of having been harassed by the Stones and that Williams stated he planned to "freak their ass [sic] out."

Williams swapped his radio for Eldridge Hardy's bicycle. At this point Brett Hughes, another member of the Black Gangster Disciples, arrived on a bicycle. Wrapped tightly around Hughes' wrist was a whiskey bag with the outline and shape of a gun inside. Defendant Williams remarked, "I am going to pop those Stones," and with that Defendant Williams and Hughes each rode off on a bicycle.

Later, Leon Jones testified, as he sat inside Darren Jones' van eating lunch, he heard four gunshots. Jones saw the defendant, Eric Williams, and Bret Hughes rush out of the alley on bicycles. Defendant, Eric Williams, turned toward the van and tossed a gun inside the van. Leon Jones did not see any other weapon, nor did he see anyone pursuing the defendant. Leon Jones got out of the van, tossed the gun into some shrubbery and rejoined his co-workers at the convenience store. Leon Jones saw Twone Hill, with a gunshot wound, lying on the ground in the parking lot of the nearby fast-food restaurant.

Leon Jones, Catchings and Baker went to Darren Jones' home, where, an hour later, they were joined by the defendant, Eric Williams. When the men asked defendant Williams how he had managed to shoot only Hill, Williams answered that he had to fire the gun because Brett Hughes was afraid to fire it.

Charles Catchings also testified as a State's witness. Catchings' account of the incident was virtually the same as Leon Jones' version. Catchings added that defendant Williams called Brett Hughes a coward because Hughes would not fire the gun. Catchings, however, did not see the gun in the van and he did not know what happened to the gun.

Eldridge Hardy's testimony on behalf of the State corroborated the testimony of Leon Jones and Charles Catchings. After hearing the gunshots, Hardy saw the defendant, Eric Williams, come out of the alley and toss a weapon into the van. Hardy also heard the defendant say that Brett Hughes was a coward and that he, defendant, took the gun from Hughes to fire it.

The final witness for the State was police detective Daniel McWeeny, who was assigned to investigate the shooting of Twone Hill. McWeeny interrogated the defendant Williams, who gave McWeeny a written statement in which the defendant admitted that he shot Hill. The defendant's statement was published to the jury and it described the events of the defendant's shooting of Twone Hill with little variation from the testimony of Leon Jones, Charles Catchings and Eldridge Hardy. In defendant's statement he said that he had observed a couple of rival gang members, Stones, near the fast-food restaurant brandishing knives and bricks, but no guns. The defendant

and Hughes had the opportunity to get away from the Stones, but did not use the opportunity. Defendant Williams further stated in his written statement that he had tried to shoot only the Stones and he expressed remorse for having shot Twone Hill.

Sharon Pommier testified on behalf of the defendant, Eric Williams. Pommier testified that she was sitting inside the fast-food restaurant near which Twone Hill fell wounded. Pommier observed a confrontation between two groups of about 10 young men, which included the defendant, Eric Williams. The defendant and the members of his group wore baseball caps with the bills turned to the right and the other group of young men, all on foot, wore baseball caps with bills turned to the left. The defendant, on a bicycle, and another young man on a bicycle wrestled over possession of a bag from which the defendant pulled a gun. The two groups picked up objects from the ground. Pommier heard gunshots and then saw Twone Hill fall to the ground.

Finally, Janell Hampton testified on defendant Williams' behalf. Hampton saw the confrontation between the Stones and the Black Gangster Disciples but no fight occurred between them.

The defendant argues that the evidence failed to establish his guilt of attempted murder and aggravated battery beyond a reasonable doubt. We do not agree. The evidence overwhelmingly proved the defendant's guilt of the attempted murder and aggravated battery beyond any doubt. The testimony of the State's witnesses, Twone Hill, Leon Jones, Charles Catchings, Eldridge Hardy, police officer Daniel McWeeny, the defendant's written statement and the testimony of the defendant's witnesses, Sharon Pommier and Janell Hampton, established that the defendant, a member of the Black Gangster Disciples street gang, saw and avoided a couple of rival gang members, the Stones. The defendant claimed that the Stones had harassed him, for which he intended to "freak their ass [sic] out," and he also said, "I'm going to pop those Stones." The defendant and Brett Hughes, who was armed with a gun, returned to the area where the defendant had seen the rival Stones gang members. The record does not indicate whether anything was said between Brett Hughes and the defendant and the opposing Stones. The coming together or meeting of the defendant and Hughes, the Black Gangster Disciples, with these rival gang members, the Stones, was testimonially described simply as a "confrontation." Hughes refused to shoot at his opposing gang members. The defendant called Hughes a coward because Hughes refused to fire upon the group, and the defendant wrestled the gun away from Hughes so that he could fire at them. The defendant fired at

them. He missed and hit the innocent victim, Twone Hill, who was unsuccessfully attempting to flee the area to avoid being injured. The fact that the bullet missed the defendant's intended mark and hit an unintended victim does not reduce or mitigate the shooting from attempted murder.

"Murder" is defined in section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) as follows:

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
>
> (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
>
> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
>
> (3) He is attempting or committing a forcible felony other than voluntary manslaughter."

"Attempt" is defined in section 8—4 (Ill. Rev. Stat. 1985, ch. 38, par. 8—4) as follows:

> "(a) A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."

The credibility of the witnesses and the believability of their testimony were determined within the jury's province. (See *Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 452 N.E.2d 558.) The jury chose to believe and accept the evidence, which abundantly established the defendant's guilt beyond a reasonable doubt of attempted murder. No reasonable doubt exists for disturbing the jury's guilty finding and we therefore refuse to do so.

Defendant next contends that the State's witnesses' testimony that the defendant was known by the nickname "Snake," and the State's witnesses' testimony referring to him as "Snake" throughout the trial, was highly prejudicial, constituted reversible error and he demands a new trial. We disagree.

The State's witnesses referred to the defendant by his nickname, "Snake," on three occasions during their testimony. The defendant did not object. By his failure to object, the defendant waived the error. Alleged errors not preserved or brought to the attention of the trial court by objections are normally waived for purposes of review. *People v. Arnold* (1984), 104 Ill. 2d 209, 217.

During his closing argument the prosecutor stated, "Unbeknownst to her, this man right here, Eric Williams, Snake ***." The

defendant's attorney objected and the judge overruled the objection.

There was uncontroverted trial testimony, to which no objection had been made, that the defendant was also known and called by his nickname, "Snake." Thus, the prosecutor had the right to predicate his argument to the jury on this evidence. He did not endeavor to improperly inflame or antagonistically arouse the jury's passion against the defendant by his argument and use of the defendant's nickname, "Snake." The defendant's contention that he was prejudiced by the State's witnesses and the prosecutor's use of his nickname, "Snake," is without merit. Conceivably, a State's witness and a prosecutor's use of a defendant's nickname may unfairly arouse a jury's sentiments against a defendant and require reversal, but such an instance is not presented in the case at bar.

■ Defendant contends that there was no evidence that he provoked the use of force against himself and therefore the trial court erred in instructing the jury, over his objection, on the use of force by one who provokes it against himself. The trial court gave the jury Illinois Pattern Jury Instructions, Criminal, No. 24—25.09 (2d ed. 1981), which reads as follows:

> "A person who initially provokes the use of force against himself is justified in the use of force only if the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person."

It is well established that it is error to submit to the jury an instruction when there is no evidence to support it. (See *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098.) In the case at bar, the State argues that the defendant's statements that he intended to "pop those Stones," and "freak their ass [*sic*] out" are evidence that defendant was the aggressor and justified the giving of this provocateur instruction. "Aggressor" and "provocateur" are not necessarily synonymous. Defendant's statements outside the presence of the rival Stone gang members, on which the State relies, were not evidence of the defendant's provocation of the Stone gang members. Neither is the evidence that some dialogue occurred between the rival gangs prior to the shooting evidence of provocations by the defendant. There was no evidence that the defendant provoked the Stones into using force against him. Indeed, there was no evidence that the Stones used any force against the defendant, provoked or otherwise. There was no evidence which supported the giving of the complained-

of provocateur instruction, and the trial court erred in submitting it to the jury, but error was certainly harmless beyond a reasonable doubt.

Defendant exchanged his radio for Hardy's bicycle and rode the bicycle to the area where he knew the Stones would be, with the expressed intention of going there to shoot the Stones. Based on the testimony of Sharon Pommier, the defendant's witness, testimony that when the defendant and the Stones came together, the two groups picked up objects from the ground, and the testimony of Janell Hampton, the defendant's witness, that she observed "the confrontation" between the two rival gangs, and the defendant's statement that prior to the defendant's return to the area of the shooting he observed the Stones in the area with knives and stones, the defendant requested the court to instruct the jury on self-defense. The trial court granted the request and submitted to the jury Illinois Pattern Jury Instructions, Criminal, No. 24—25.06 (2d ed. 1981), which reads as follows:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.
>
> However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

Because the jury was given this self-defense instruction, coupled with the uncontroverted evidence that the defendant sought out and returned to the area for the expressed purpose of shooting the rival gang members, and in attempting to execute his wicked intent he mistakenly shot the innocent bystander, the trial court's erroneous submission of the provocateur instruction to the jury was harmless error.

■ Defendant finally contends that the 18 years' imprisonment sentence was excessive. A trial court has considerable discretion in the determination and imposition of a proper sentence, and absent an abuse of that discretion, a reviewing court will not modify the sentence. (See *People v. Hicks* (1984), 101 Ill. 2d 366.) The defendant was convicted of attempted murder, for which a permissible imprisonment sentence is from 6 to 30 years. (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4(c)(1), 1005—8—1(a)(3).) The sole mitigating factor was defendant's age, 18 years. Factors in aggravation were defendant's previous armed robbery conviction, two previous aggravated battery convictions, and defendant's unwarranted, unprovoked and malicious conduct in the instant case. Under these circumstances, although a

shorter imprisonment sentence might likewise have been appropriate, we cannot conclude that the trial court abused its discretion in imposing an 18 years' imprisonment sentence.

For the reasons stated, we affirm the judgment and sentence.

Affirmed.

SULLIVAN and MURRAY, JJ., concur.