(No. 36472.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES THORNTON, Plaintiff in Error.

*Opinion filed November 30, 1962.*

Austin J. O'Malley, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and John T. Gallagher and Dean H. Bilton, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

The defendant, James Thornton, was indicted in the criminal court of Cook County on a charge of murder. He pleaded not guilty, was tried by the court without a jury, found guilty, and sentenced to imprisonment in the penitentiary for 14 years.

The defendant brings this writ of error contending that he was not proved guilty of murder beyond a reasonable

doubt; further, that at most the State proved only man-slaughter; and finally, that he was inadequately represented by counsel and hence deprived of his constitutional rights.

It is uncontroverted that the defendant accompanied by two friends encountered four young men; that he became involved in a fight; and that one Matthews came to his death as a result of a stab wound inflicted by defendant during the course of the fight. The defendant contends, however, that the stab was inflicted in self-defense and that the rapid sequence of events prevented the formation of malice necessary to prove the crime of murder.

The only occurrence witnesses were the defendant and the companions of both the defendant and the deceased Matthews. It appears from the record that Matthews and his friends, Sawyer, Gilbert and Bailey, all in their early twenties, planned to go to a birthday party, and were near 43rd Street and Lake Park in Chicago shortly before 2 A.M. on August 30, 1959. There they encountered defendant talking to his companions, Jones and Gray. Because of the conflict in the testimony of the occurrence witnesses, the varying accounts of the events leading to Matthew's death must be separately summarized.

Gilbert did not know how the fight started, but he first saw defendant and Sawyer against a car. He testified that the deceased, Bailey and Gilbert were trying to separate defendant and Sawyer; that defendant drew a knife and slashed; that everyone then ran; that defendant ran into an alley after deceased and stabbed him.

Bailey testified that an argument started between Sawyer and defendant; that Sawyer had his hand in his pocket; that defendant pulled Sawyer's hand from his pocket and they started to fight. Defendant had a knife in his hand and they all backed away. Defendant then chased deceased into an alley. When deceased came out of the alley, he said he had been stabbed.

Sawyer testified that defendant said he was going to kill him; that defendant then grabbed Sawyer's hand in his pocket and they fought. Gilbert and the deceased separated the antagonists, and defendant started toward deceased with something in his hand. Sawyer and the deceased then ran in opposite directions.

According to Jones and Gray, defendant's companions, the original fight started when, after an argument, Sawyer approached defendant with his hand in his pocket. Defendant grabbed Sawyer by the pocket and they scuffled. Then the others joined in. When the combatants were separated, three of the boys ran across the street and began throwing bottles. The deceased ran to an alley about 75 feet away. Jones testified that defendant chased deceased to the alley, and they came out of the alley fighting, and defendant was staggered by a bottle thrown from the other side of the street. Gray, however, testified that defendant was running ahead of deceased on the way to the alley; that he fell; and then the deceased was ahead of defendant. Gray also testified that Jones was the only one hit by any thrown object.

The defendant Thornton testified that he grabbed Sawyer when he put his hand in his pocket; that someone other than Sawyer hit him on the head, and blows were coming from everywhere; that he ran and was felled by a rock; that he then ran to the alley where he was hit in the head. He ran out of the alley and was hit with a bottle. He then ran into a vestibule and called for a shotgun and the boys ran. The defendant then ran home, and proceeded to Detroit where he remained until he was extradited.

It is undisputed that the deceased died of a knife wound in a fight, and it is clear that defendant was the only person involved using a knife. While it is not clear whether defendant or Sawyer was the original aggressor, the consistent testimony of the State's witnesses indicates that the de-

ceased merely attempted to separate the combatants, and that all the boys fled when defendant drew a knife. The State's evidence, and the testimony of at least one defense witness indicates that defendant pursued the deceased while he was fleeing the scene.

The testimony adduced by the defense, on the other hand, is conflicting especially in relation to the events transpiring after the boys fled the scene. We have examined the entire record and find that the defendant's confused narrative of the affair is contradicted in many particulars by his own witnesses.

Where a cause is tried without a jury the law commits to the trial judge the determination of the credibility of the witnesses and the weight to be given their testimony. Where the evidence is merely conflicting, this court will not substitute its judgment for that of the trier of fact who heard the witnesses. (*People* v. *Dillon,* 24 Ill.2d 122; *People* v. *Sally,* 17 Ill.2d 578.) We think that the evidence in the record was sufficient to permit the trial court to determine that defendant was engaged in a fight; that he drew a knife and the four boys abandoned the conflict and fled the scene; that defendant then deliberately pursued the fleeing boy and killed him. Such a determination is sufficient to sustain a conviction of murder. The right of self-defense, urged by defendant does not permit killing in retaliation or revenge, (*People* v. *Dillon,* 24 Ill.2d 122,) nor does it allow the pursuit and killing of even an original aggressor after the aggressor abandons the quarrel. (*People* v. *Maurantonio,* 8 Ill.2d 60.) In the case at bar the evidence was sufficient to justify the trier of fact's determination that the killing was not done in self-defense.

Defendant next contends that at the most the instant homicide was manslaughter. The statutory definition provides: "Manslaughter is the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever. It must be voluntary,

upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, or involuntary in the commission of an unlawful act, or a lawful act without due caution or circumspection." (Ill. Rev. Stat. 1959, chap. 38, par. 361.) "In cases of voluntary manslaughter, there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given, and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and punished as murder." Ill. Rev. Stat. 1959, chap. 38, par. 362.

We believe the trial court was entitled to accept the version of the incident as testified to by the State's witnesses, and on the basis of this testimony was justified in finding that defendant had no such provocation as would require a lesser verdict of manslaughter.

Defendant also urges the inadequacy of counsel as a ground for reversal of his conviction. Defendant was represented by counsel of his own choosing at the trial and by the public defender on his post-trial motions. We have examined the entire record and find no inadequacy in the representation afforded defendant. We also find no merit in the contention that the trial court ignored defendant's character witnesses. Proof of good character may properly be considered, but does not require a judgment of not guilty in the case at bar. It was for the trial court to determine the weight to be given to such testimony.

It is our conclusion that defendant was given a fair trial and that the evidence was sufficient to sustain his conviction. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*