THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC MITCHELL, Defendant-Appellant.

First District (3rd Division)   No. 1—88—3396

Opinion filed November 13, 1991.

Randolph N. Stone, Public Defender, of Chicago (Tina Liebling, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

After a bench trial, defendant, Eric Mitchell, was convicted of second degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—2) and was sentenced to a term of four years' imprisonment. He argues on appeal that the Illinois second degree murder statute violates the Illinois and United States constitutions because it (1) relieves the prosecution of its burden of proving beyond a reasonable doubt every element of second degree murder; (2) violates the separation of powers because it infringes on the State's Attorney's discretion to charge second degree murder instead of first degree murder; and (3) violates due process and equal protection by deterring those convicted of second degree murder from appealing their convictions. He also argues that (1) his conviction must be reversed because the only account of the shooting was his statement that it was accidental and the statement was not contradicted, improbable, or impeached; (2) there was no evidence that his mental state was an actual but unreasonable belief in his right to use self-defense; and (3) he did not receive a fair trial because the trial court rejected his defense from the start.

On March 1, 1988, 18-year-old Eric Mitchell and Jacqueline Gardner went on a date. They returned to Gardner's apartment and went to sleep. Around 2:30 a.m. on March 2, 1988, Gardner's ex-

boyfriend, Samuel Curry, began pounding on her door. Gardner testified that Curry, who was drunk, refused to leave and Gardner eventually let him in. Defendant got out of bed, put his handgun in his pocket, and dressed. Curry, who was unarmed, shoved defendant and put his hand in Gardner's face, yelling at her, "Bitch, you are going to die." Gardner had previously told defendant about some of her problems with Curry, including his threats and physical attacks.

Gardner further testified that defendant tried talking to Curry, but Curry grabbed Gardner by the neck, forced her into the bathroom, and started choking her. After Curry refused to release Gardner, defendant broke down the bathroom door, and Gardner fled from the apartment.

Defendant's statement, paraphrased by the assistant State's Attorney and introduced without objection, related that Curry then rushed toward defendant and grabbed the gun from his pocket. The two men began wrestling over the gun, knocking over the refrigerator in the process. During the struggle, the gun went off twice. Curry then ran toward the back of the apartment, followed by defendant. They began struggling again. The gun, which was in defendant's hand, went off, shooting Curry in the head.

Defendant left the apartment and went to the emergency room to be treated for a gunshot wound. He spoke to the first uniformed police officer he saw, reported the shooting, and cooperated fully with the police. He was arrested at the hospital.

The testimony of a Chicago police officer and a Chicago police detective corroborated that the apartment was in a state of disarray, consistent with a struggle having taken place. The deputy medical examiner who performed the autopsy on Samuel Curry found gunshot wounds to the left shoulder, left side of the chest, and head. The deceased's blood tested positive for alcohol with a .13 level.

Defendant was charged with first degree murder, but the trial court judge found him guilty of second degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2.) Although the trial judge found that the victim had provoked the altercation, he rejected defendant's argument that the shooting was an accident because there had been three gunshots. The trial judge also found that the force used by defendant was unreasonable since the victim was unarmed.

Defendant's motion for a new trial was denied. The only issue raised in that motion was whether defendant was found guilty beyond a reasonable doubt. The trial judge sentenced defendant to four years' imprisonment.

■ Initially, defendant challenged the constitutionality of the second degree murder statute on three grounds. Before we reach those arguments, the State contends that defendant lacks standing to challenge the constitutional validity of the statute and has waived those issues because he did not raise them in the trial court. While it is generally true that failure to raise an issue in the trial court will waive it on appeal, a constitutional challenge to a statute can be raised at any time. (*People v. Bryant* (1989), 128 Ill. 2d 448, 454.) Therefore, defendant has not waived his challenge of the constitutional validity of the second degree murder statute. Furthermore, defendant has standing to challenge the statute's constitutionality because he has sustained a direct injury as a result of its enforcement. (*People v. Esposito* (1988), 121 Ill. 2d 491, 512.) We find, however, that Illinois' second degree murder statute is constitutional.

First, defendant argues that the second degree murder statute is unconstitutional because it relieves the State from proving beyond a reasonable doubt every element of the offense. He contends that the prosecution should be required to prove beyond a reasonable doubt that he had an unreasonable belief that the circumstances would justify or exonerate the killing. He further argues that the statute misplaces the burden of proof because he must prove the mitigating factor by a preponderance of the evidence.

■ Defendant's arguments misinterpret the law. Contrary to defendant's assertion, the homicide statute in *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881, was not substantially identical to the Illinois second degree murder statute. Instead, it required the defendant to disprove an element of homicide before the charge could be reduced to manslaughter. Both the homicide and manslaughter statutes shared the common elements of intentional and unlawful (neither justifiable nor excusable) killing, but the homicide statute added malice aforethought as an element. The *Mullaney* jury was instructed that malice aforethought, which was an essential and indispensable element of the crime of murder, could be implied unless the defendant proved that he acted in the heat of passion on sudden provocation. This presumption of malice aforethought unconstitutionally shifted the burden to the defendant to negate that element. *Mullaney*, 421 U.S. at 701-02, 44 L. Ed. 2d at 521-22, 95 S. Ct. at 1891.

The State correctly asserts that *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319, is controlling. The statute in *Patterson*, which was substantially the same as the Illi-

nois second degree murder statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—2), required the prosecution to prove beyond a reasonable doubt that there was an intent to cause the death of another person and the death of that person or of a third person was caused by the defendant's acts. (*Patterson*, 432 U.S. at 205, 53 L. Ed. 2d at 289, 97 S. Ct. at 2324.) No further facts were presumed or inferred in order to constitute the offense. (*Patterson*, 432 U.S. at 205-06, 53 L. Ed. 2d at 289, 97 S. Ct. at 2324.) The court in *Patterson* held that it was constitutional to require the defendant to prove by a preponderance of the evidence the affirmative defense of extreme emotional disturbance, which was a mitigating factor to reduce murder to manslaughter. 432 U.S. at 206, 53 L. Ed. 2d at 289, 97 S. Ct. at 2324-25.

Due process does not require the State to disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. (*Patterson*, 432 U.S. at 210, 53 L. Ed. 2d at 292, 97 S. Ct. at 2327.) Instead, it requires the prosecution to prove beyond a reasonable doubt all elements included in the definition of the offense with which the defendant is charged. (*Patterson*, 432 U.S. at 210, 53 L. Ed. 2d at 292, 97 S. Ct. at 2327.) The Illinois second degree murder statute does not relieve the State of its burden of proving beyond a reasonable doubt every element of the offense. The State must prove all the elements of first degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).) To reduce that conviction to second degree murder, the defendant must prove the mitigating factor by a preponderance of the evidence. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).) That requirement is constitutional. *Patterson*, 432 U.S. at 205-06, 53 L. Ed. 2d at 289, 97 S. Ct. at 2324-25.

Defendant then asserts that the second degree murder statute is unconstitutional because it violates the doctrine of separation of powers in that it forbids the prosecution from charging second degree murder rather than first degree murder. There is nothing in the statute, however, prohibiting the State from initially charging the defendant with second degree murder. Furthermore, the recent cases of *People v. Clark* (1991), 207 Ill. App. 3d 439, 449, and *People v. Burks* (1989), 189 Ill. App. 3d 782, 785, ruled that the second degree murder statute does not violate the separation of powers doctrine. The State may charge second degree murder when it alleges that it can prove the elements of first degree murder, but concedes the presence of a mitigating factor that would reduce the charge to second degree murder. (*Burks*, 189 Ill. App. 3d at 785.)

Moreover, the procedure outlined in section 9—2(c) of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c)) refers only to the circumstances where the State charges first degree murder and the defendant wants to reduce it to second degree murder. *Clark*, 207 Ill. App. 3d at 449.

Defendant further contends that the second degree murder statute is unconstitutional because it discourages those convicted of second degree murder from appealing their convictions. On remand, defendant argues, the trial court might convict him of first degree murder.

■ Defendant's argument is without merit. There is an implied acquittal of an offense where there is a guilty verdict on a lesser offense and silence as to the charged offense. (*Green v. United States* (1957), 355 U.S. 184, 190-91, 2 L. Ed. 2d 199, 206, 78 S. Ct. 221, 225; Ill. Rev. Stat. 1987, ch. 38, par. 3—4(a).) In order to be classified as a lesser included offense, all the elements must be included within the greater offense or there must be a less culpable mental state. (*People v. Smith* (1980), 78 Ill. 2d 298, 306; Ill. Rev. Stat. 1987, ch. 38, par. 2—9.) Because the elements of first and second degree murder are the same, and second degree murder requires a less culpable mental state (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2), 9—2(b)), second degree murder is a lesser included offense of first degree murder. A conviction for second degree murder is therefore an acquittal of first degree murder. (Ill. Rev. Stat. 1987, ch. 38, par. 3—4(a).) If a defendant appeals his second degree murder conviction and it is overturned and remanded for a new trial, double jeopardy bars being retried for first degree murder. Consequently, the statute does not deter appeals and is not unconstitutional on those grounds.

Defendant then argues that his conviction must be reversed because the only account of how the shooting occurred was his uncontradicted statement that it was accidental. Defendant relies on cases ruling that the trier of fact cannot disregard or reject the defendant's version of events if it is not contradicted and not inherently improbable. (See *People v. Jordan* (1954), 4 Ill. 2d 155, 163; *People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85; *People v. Sumner* (1982), 107 Ill. App. 3d 368, 371.) This is true especially where the defendant's testimony is corroborated at least in part. *People v. Harling* (1975), 29 Ill. App. 3d 1053, 1059.

■ Defendant's argument fails because there is no evidence in the record that the trial court rejected or disregarded defendant's testimony. The evidence presented at trial was sufficient to show

that defendant had an actual but unreasonable belief in his right to use self-defense. The victim entered the apartment, started an argument, physically attacked his ex-girlfriend, and tried to get defendant's gun. Moreover, the defense counsel commented in the opening and closing arguments that the shooting occurred in self-defense and, in the alternative, was accidental.

■ Next, defendant argues that the trial court's finding that he shot in self-defense was purely speculative. It was defense counsel, however, who presented self-defense as the defense theory. As defendant concedes, there was some evidence that defendant intentionally shot the victim after he chased the victim down the hallway. While it is true that defendant also stated that the shot to the head occurred after defendant lost his balance and his elbow hit the wall, causing the gun to discharge, there was no testimony regarding which of the three shots caused the victim's death. Therefore, the trial court's finding that defendant actually believed he had the right to use self-defense was not speculative.

Further, defendant asserts that even if he fired intentionally, there was no evidence that he had the mental state required for a conviction of second degree murder based on an unreasonable belief in self-defense. Defendant contends that the evidence shows that the victim provoked the incident, that he was violent, and that it was he who introduced the gun into the struggle. Defendant states that possibly this evidence could support a conviction of second degree murder based on provocation, but not on an unreasonable belief in the right to use self-defense. Even if that were true, defendant states, the mental states required for self-defense and provocation second degree murder are mutually exclusive. *People v. Clark* (1973), 15 Ill. App. 3d 756, 759.

Again, in this argument, defendant concedes that there was some evidence that the shooting was intentional. The record shows that defendant was armed and the victim was unarmed. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the conviction will not be overturned. (*Collins*, 106 Ill. 2d at 261.) The evidence presented at trial was sufficient to establish beyond a reasonable doubt that defendant had an actual but unreasonable belief in his right to use self-defense. Not only was he aware of the victim's previous threats and physical attacks on Gardner, but the victim shoved defendant, at-

tacked Gardner, rushed toward defendant, and grabbed defendant's gun.

Finally, defendant contends that he did not receive a fair trial because the trial court judge rejected his defense from the start. Defendant relies on *People v. Bowie* (1976), 36 Ill. App. 3d 177, 180, where the court stated that the trial court must consider all the matters in the record before deciding a case. Because the trial court in *Bowie* did not remember defendant's testimony or consider the crux of his defense when it entered judgment, the defendant was denied a fair trial. 36 Ill. App. 3d at 180.

■■ The trial court judge in this case stated in his finding:

"The defense is twofold. Number one, it was an accident. I rejected that right from the start. How can he shoot him three times, if it was an accident?

The other issue was the force necessary here; was it necessary, or was it unreasonable. Here, three shots were fired; one to the head, chest and arm. The victim here had absolutely no weapon, except his hands, and there is no question in my mind, hearing the testimony, that his action was completely unreasonable."

This statement implies that the trial court judge made up his mind, at least that the shooting was not accidental, without considering all the evidence. Although it was error, it was harmless because there was sufficient evidence to reject the defense of an accidental shooting. Considering the totality of the evidence presented, it can be concluded that a trial without this error would produce no different result. *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29.

Based on the foregoing, the conviction is affirmed.

Affirmed.

RIZZI and GREIMAN,* JJ., concur.

---

*Justice Freeman heard oral arguments prior to his election to the Illinois Supreme Court; Justice Greiman was substituted, read the briefs and record and concurred with this opinion.