THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ENRIQUE MONTES DE OCA, Defendant-Appellant.

First District (3rd Division) No. 1—91—1165

Opinion filed November 12, 1992.—Rehearing denied December 3, 1992.

Rita A. Fry, Public Defender, of Chicago (Tina Liebling, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara Jones, and Michael Falagario, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendant, Enrique Montes De Oca, was convicted of second degree murder after he admitted that he shot and killed Roberto Delgadello but claimed that he acted in self-defense. The trial court imposed a sentence of 15 years' imprisonment, which is the maximum term allowed for an adult convicted of second-degree murder.

On appeal, defendant raises five issues regarding whether: (1) the trial court's finding that defendant was the initial aggressor was manifestly erroneous; (2) the State disproved defendant's assertion of self-defense beyond a reasonable doubt; (3) the trial court improperly placed the burden on defendant to prove his innocence; (4) the trial court properly prohibited defendant from testifying as to the contents of his prior statement to the police; and (5) the Illinois murder statute is constitutional.

Defendant also correctly asserted, and the State agreed, that the trial court improperly sentenced defendant as an adult. Defendant was 15 years old at the time of the crime and was charged with first degree murder. Pursuant to the automatic transfer provision in the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, par. 805—4(6)(a)), defendant was properly prosecuted as an adult. After a bench trial, defendant was found guilty of first degree murder but on a motion to reconsider, his conviction was reduced to second degree murder. A minor must be sentenced under the terms of the Juvenile Court Act where the minor is prosecuted as an adult but is not convicted of an offense designated in the automatic transfer provision. (Ill. Rev. Stat. 1989, ch. 37, par. 805—4(6)(c).) Since second degree murder is not included in the automatic transfer provision, defendant should have been sentenced as a juvenile.

Following oral argument in this case, this court entered an order *sua sponte* that severed the issue of the improper sentencing of defendant from this appeal, remanded to the circuit court for an expedited resentencing hearing in accordance with the Juvenile Court Act,

and directed the circuit court, in resentencing defendant, to grant him credit for time served or in custody.

As to the remaining issues on appeal, we affirm the defendant's conviction and find that the Illinois murder statute is constitutional.

At trial, the State presented three witnesses: police officer Scott Slavin; Jaime Alvarez, who was a friend of defendant and an occurrence witness; and Jesus Delgadello, who was the cousin of the victim and also an occurrence witness.

The defense presented three witnesses: defendant; Ramon Garcia, who was a friend of defendant and an occurrence witness; and Hector Oliva, who was a spectator, not a participant in the incident.

Although the testimony was conflicting as to some specific details, all witnesses agreed on the events which resulted in the shooting at issue. Defendant, together with four other young men (Alvarez, Garcia, Jesus Avila and Carlos Castillo), was on the front porch of Carlos Castillo's house. Roberto (the victim) and Jesus Delgadello (the victim's cousin), accompanied by several other young men, approached the Castillo porch. Jesus Delgadello, by his own testimony, went with his companions to the Castillo porch to provoke a fight.

Thereafter, Jesus Delgadello engaged in a fistfight with Jesus Avila. The fistfight began in front of the Castillo house and continued while the crowd moved to the corner of the block. The "crowd" numbered between 10 and 30 persons according to the various testimony. After the crowd assembled at the corner, defendant somehow came into possession of a shotgun, then shot and killed Roberto Delgadello. Following the shooting, defendant fled and was eventually apprehended in California. Officer Slavin testified that he arrived at the scene approximately 30 seconds after the shooting and that no weapons were ever recovered.

As a witness for the State, Jaime Alvarez, a friend of Jesus Avila, testified that when the crowd was at the corner, the victim acted in a threatening manner by showing the handle of a gun which was in his waist band. Defendant, with a shotgun, then appeared behind Alvarez, waved the shotgun around, and ordered everyone to "get away." Jesus Delgadello put his hands in front of defendant and attempted to calm him. The victim then reached for his waist and defendant shot him. While defendant was yelling and waving the shotgun, the victim said nothing nor did he draw a gun from his belt.

Alvarez further testified that while the fistfight was going on, the victim made threats in general, not to a specific individual, but defendant was not present when the victim made the verbal threats and showed his gun. However, Alvarez acknowledged that he was not

in a position to see where defendant came from or what defendant saw and heard.

Jesus Delgadello testified that he saw defendant carrying a gun as defendant walked on the sidewalk from the Castillo house to the corner. The fistfight stopped because defendant then waved the weapon and ordered the crowd "to back up." Defendant pointed the gun at Jesus Delgadello and Jesus asked him several times to put down the gun. Jesus Delgadello did not see a weapon in the victim's possession that night and did not hear the victim threaten defendant.

Defendant testified that during the fistfight between Jesus Delgadello and Avila, the other members of the crowd "were kind of loud and started calling out names" during which time the victim was "arguing and threatening people *** saying that we were all next." Defendant followed the fight to the corner but stated that he was unarmed. At the corner, defendant heard someone yell "go get a gun" and the victim "ran towards a vehicle." Defendant stated that he was frightened when he saw the victim go toward the car. When the victim returned to the crowd, the fistfight had ended but the groups continued to argue verbally. Defendant claimed that he saw the victim "pulling out a gun *** from his waist band" and heard the victim say "I am going to kill you." Defendant then picked up a shotgun which was inexplicably lying by a tree and shot the victim. Defendant testified that he did not know who owned the gun or who put the gun by the tree.

During cross-examination, defendant testified that the victim did not say anything to him when the victim came to the corner from the car but that defendant told the people in the crowd to "step back" and "get out of here." After the shooting, defendant dropped the gun and fled.

As a witness for the defense, Ramon Garcia testified that he was on the Castillo porch with defendant when the Delgadellos arrived. As the fight moved toward the corner, Garcia heard someone yell "take out the gun" and then saw the victim run to a car but did not see what, if anything, the victim took out of the car. The victim returned to the crowd and stood in front of defendant. Garcia stated that he saw the victim pointing a gun at defendant and, until the shooting, did not know that defendant had a gun.

Hector Oliva testified that he lived across the street from the Castillo house and he saw more than 20 people assemble at the Castillo house on the evening of the shooting. When he saw two individuals begin to fight, Oliva went to his porch and watched. Oliva heard someone yell "get the gun in" and then saw a person, later identified

as the victim, run to a van and return with his hand under his shirt. Oliva saw an unidentifiable object in the victim's hand before the shooting.

On appeal, defendant first asserts that the trial judge erred in finding that defendant was the initial aggressor.

The trial court found that defendant's testimony was "selective and evasive" and expressly rejected his version of how the gun appeared at the scene. The trial court stated "[t]here's no way in the world that this Court believes the testimony of the defendant that the gun was situated or laying [*sic*] by the tree in an incidental drop by someone." After reviewing all the testimony and noting the contradictions, the court found defendant to be the initial aggressor, reasoning that the incident was "a classic situation where the initial aggressor bringing the gun accelerated the situation. If it had not been brought to the scene by [defendant] at that point perhaps what occurred would not have occurred."

The issue of self-defense is always a question of fact determined by the trier of fact. (*People v. Felella* (1989), 131 Ill. 2d 525, 534, 546 N.E.2d 492; *People v. Price* (1987), 158 Ill. App. 3d 921, 926, 511 N.E.2d 958.) Specifically, whether the defendant was the initial aggressor, *i.e.*, the one who provoked the fatal confrontation, is a question of fact to be decided by the trier of fact. (*People v. Smith* (1990), 195 Ill. App. 3d 878, 882, 552 N.E.2d 1061.) Since the testimony of the occurrence witnesses varied somewhat in the present case, the trial judge, as the trier of fact in a bench trial, must weigh the credibility of the witnesses, draw reasonable inferences from their testimony, and resolve conflicts in the evidence. (*Felella*, 131 Ill. 2d at 534.) Unless the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of the defendant's guilt, the trier of fact's determination will not be disturbed on appeal. *Felella*, 131 Ill. 2d at 533-34.

Conduct which may qualify a defendant as the initial aggressor includes the act of pointing a loaded gun (*People v. Barnard* (1991), 208 Ill. App. 3d 342, 350, 567 N.E.2d 60; *People v. Crum* (1989), 183 Ill. App. 3d 473, 539 N.E.2d 196) or even the mere utterance of words (*Barnard*, 208 Ill. App. 3d at 350; *People v. Santiago* (1987), 161 Ill. App. 3d 634, 515 N.E.2d 228). Moreover, a nonaggressor has a duty not to become the aggressor. *People v. Nunn* (1989), 184 Ill. App. 3d 253, 269, 541 N.E.2d 182.

■ In the present case, the evidence reveals that the victim and his cousin, Jesus Delgadello, instigated the initial confrontation between the two groups of individuals when they assembled at the Cas-

tillo porch. However, the testimony also indicates that the fistfight had ended and then the situation transformed into a different encounter when defendant displayed a loaded shotgun and shouted at the crowd which had gathered at the corner. Although defendant did not provoke the fistfight, the right of self-defense does not justify killing the original aggressor after the aggressor abandons the quarrel or as an act of retaliation and revenge. See *People v. Thornton* (1962), 26 Ill. 2d 218, 222, 186 N.E.2d 239; *People v. Huddleston* (1988), 176 Ill. App. 3d 18, 34, 530 N.E.2d 1015.

In light of the conflicting evidence, the trier of fact's duty to resolve such conflicts, and a reviewing court's inability to substitute its judgment for that of the trial court where the evidence is conflicting, we find that the trial court did not err in finding that defendant was the aggressor at the time of the shooting.

Second, defendant contends that the State failed to disprove that he acted in self-defense. We disagree.

Self-defense is an affirmative defense (Ill. Rev. Stat. 1989, ch. 38, par. 7—14) which, once raised, places the burden on the State to disprove it beyond a reasonable doubt. *People v. Woods* (1980), 81 Ill. 2d 537, 542, 410 N.E.2d 866.

The use of force is justified as self-defense where (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; (4) the force threatened is unlawful; (5) the person threatened must actually believe: (i) a danger exists, (ii) the use of force is necessary to avert the danger, and (iii) the kind and amount of force which he uses is necessary; and (6) the above beliefs are reasonable. (*Crum*, 183 Ill. App. 3d at 482.) The State carries its burden of proof where it is able to negate even one of the elements. *People v. Tucker* (1988), 176 Ill. App. 3d 209, 216, 530 N.E.2d 1079; *People v. Greene* (1987), 160 Ill. App. 3d 1089, 1096, 513 N.E.2d 1092; *People v. Carter* (1985), 135 Ill. App. 3d 403, 409, 481 N.E.2d 1012.

 As we previously found, one element of self-defense was negated by the trial court's finding that defendant was the aggressor at the time of the shooting and this finding was not so improbable as to raise a reasonable doubt of defendant's guilt. Accordingly, the theory of self-defense is not available to defendant.

Third, defendant asserts that the trial court improperly shifted the burden to him to prove his innocence by stating in its findings:

"The whole thing in the Court's opinion, hinges around the question of the gun. And how the gun got to the scene. There's no way in the world that this Court believes the testimony of

the defendant that the gun was situated or laying [*sic*] by the tree in an incidental drop by someone. The Court specifically rejects it."

The State responds that by these remarks, the trial court was only commenting on defendant's credibility and its disbelief of defendant's version as to how the shotgun mysteriously appeared at the scene. We agree with the State.

At trial, defendant testified that he discovered the shotgun lying by the tree and did not know who brought the gun to the corner. In contrast, Jesus Delgadello testified that he saw defendant carrying the gun while defendant was walking on the sidewalk toward the corner.

The trier of fact may consider the probability or improbability of the defendant's account, the circumstances surrounding the crime and the relevant testimony of other witnesses. (*People v. Young* (1989), 187 Ill. App. 3d 977, 984, 543 N.E.2d 986.) There is no obligation to believe or accept as true the testimony of the defendant concerning self-defense. *People v. Belpedio* (1991), 212 Ill. App. 3d 155, 161, 569 N.E.2d 1372; *People v. Guzman* (1990), 208 Ill. App. 3d 525, 531, 567 N.E.2d 500; *People v. Price* (1987), 158 Ill. App. 3d 921, 926, 511 N.E.2d 958; *People v. Eshaya* (1986), 144 Ill. App. 3d 757, 763, 494 N.E.2d 772.

■ We believe that the challenged remarks of the trial court referred to the conflicting testimony as to how the gun got to the scene, were an expression of the court's disbelief of defendant's version, and did not improperly shift the burden on defendant to prove his innocence.

■ Fourth, defendant contends that the trial judge erred in prohibiting defendant from testifying as to the content of his prior statement to the police. Defendant waived this issue by failing to make an offer of proof to the trial court.

If the exclusion of evidence is to be preserved as error on appeal, an offer of proof must be made to the trial court as to what the desired testimony would have been. *People v. Faulkner* (1989), 186 Ill. App. 3d 1013, 542 N.E.2d 1190; *People v. Gordon* (1980), 82 Ill. App. 3d 906, 403 N.E.2d 570; *People v. Slaughter* (1977), 55 Ill. App. 3d 973, 371 N.E.2d 666.

In making an offer of proof, counsel must explicitly state what the excluded testimony would reveal and not merely allude to or suggest what might be divulged by such testimony. (*People v. Brown* (1982), 104 Ill. App. 3d 1110, 1119, 433 N.E.2d 1081.) Absent a

clearly articulated offer of proof, we need not consider whether the trial court erred. *Brown*, 104 Ill. App. 3d at 1119.

The record reveals that defense counsel did not make the requisite offer of proof and thus waived this issue.

However, even if not waived, a witness generally may not offer extrajudicial statements for the purpose of corroborating his testimony given at the trial. *People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363.

The record suggests that the purpose of the intended questions concerning defendant's statement to the police was to show that defendant's in-court testimony was consistent with his prior statement to the police. Prior consistent statements are only admissible when they are necessary to rebut an allegation that the witness was motivated to lie or his testimony is of recent fabrication. *People v. Klinkhammer* (1982), 105 Ill. App. 3d 747, 749, 434 N.E.2d 835.

■ Lastly, defendant asserts that the Illinois murder statute (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 9—2) violates the Federal and State constitutional rights to due process of law and thus is unconstitutional.

The arguments advanced by defendant have been repeatedly rejected, as acknowledged by defendant, in numerous appellate decisions. (See *People v. Collier* (1992), 228 Ill. App. 3d 159, 161, 592 N.E.2d 444, citing *People v. Guidry* (1991), 220 Ill. App. 3d 406, 581 N.E.2d 38; *People v. Brown* (1991), 218 Ill. App. 3d 890, 578 N.E.2d 1168; *People v. Wright* (1991), 218 Ill. App. 3d 764, 578 N.E.2d 1090; *People v. Willis* (1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215; *People v. Cook* (1991), 217 Ill. App. 3d 299, 576 N.E.2d 1242; *People v. Hrobowski* (1991), 216 Ill. App. 3d 711, 575 N.E.2d 1306; *People v. Thomas* (1991), 216 Ill. App. 3d 469, 576 N.E.2d 1020; *People v. Collins* (1991), 213 Ill. App. 3d 818, 572 N.E.2d 1005; *People v. Lyons* (1991), 213 Ill. App. 3d 617, 572 N.E.2d 1163; *People v. Gore* (1991), 212 Ill. App. 3d 984, 571 N.E.2d 1041; *People v. Clark* (1991), 207 Ill. App. 3d 439, 565 N.E.2d 1373; *People v. Jerome* (1990), 206 Ill. App. 3d 428, 564 N.E.2d 221; *People v. Buckner* (1990), 203 Ill. App. 3d 525, 561 N.E.2d 335; see also *People v. Mitchell* (1991), 221 Ill. App. 3d 926, 583 N.E.2d 78.) We find no basis to reconsider these prior rulings.

Judgment affirmed.

RIZZI and TULLY, JJ., concur.