THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE HARPER, Defendant-Appellant.

First District (1st Division)   No. 1—91—0195

Opinion filed June 6, 1994.

Rita A. Fry, Public Defender, of Chicago (Lynn Flanagan Wilson, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Michael R. Slovis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, George Harper, shot and killed Kenny Rogers on Magnolia Street in Chicago in 1990. Defendant believed Rogers to be a member of street gang which rivalled his own. Following his conviction for that murder, defendant was sentenced to a 50-year prison term. We affirm.

On the day of the murder, Rogers was accompanied by Timothy Jefferson and Jefferson's brother, Ike Glover, on a walk to a

neighborhood store. Several blocks from the store, they happened upon a rowdy group of youths, who began throwing rocks and bottles at the three men. Some of the youths crossed the street and demanded that Jefferson, who was wearing a baseball hat, acknowledge his loyalty to a street gang. Frightened, Jefferson put his hand in his jacket pocket, feigning possession of a weapon. The youths retreated to the other side of Magnolia Street. Rogers and his friends continued toward the store. A shot rang out. Rogers ran a few steps and fell to the ground. Glover remained with Rogers while Jefferson ran to a nearby fire station for assistance. Rogers died at the hospital from a single gunshot wound. Neither Jefferson, Rogers nor Glover was a gang member, and none carried any weapons.

Within an hour of the shooting, defendant and Jerry Shields, both members of the same street gang, visited Anthony Keel's house, which is near the scene of the shooting. Defendant and Shields told Keel, a fellow gang member, of the earlier incident on Magnolia Street. Defendant related that one of the men wore a hat "turned the wrong way," and defendant's group engaged the three in a "verbal exchange." Defendant told Keel that he had "hit a nigger" after the altercation became physical.

That evening, Shield's girlfriend came to the apartment and told Keel's girlfriend about a shooting. When Keel asked defendant about it, defendant told Keel that he had "shot the nigger." Defendant thought one of the men was "going for a gun."

Later that night, defendant voluntarily accompanied investigating officers to the police station where he admitted his participation in the shooting. Defendant stated that he and fellow gang members were at the corner of Magnolia and Sunnyside Streets when three men approached the area on the other side of Magnolia Street, one of whom wore a "cocked" baseball cap. One of defendant's friends instructed defendant to get the gun which was stashed in a nearby dumpster. While at the dumpster, defendant's group called for him to return to the scene so he put the gun in his waistband and ran back to his group. As he rejoined the others, he noted that one was throwing bottles at the three men. Another ran up to the man with the turned cap, demanding that he straighten it. The man did so, but also put his hand in his jacket. Someone said "shoot him," and defendant pulled the gun from his waistband and cocked it. As he raised the gun, it "went off."

Sean Wolfe was among the gang members with defendant at the time of the shooting. According to Wolfe, one of the men wore a hat which was "turned," indicating an affiliation with a rival area gang. After hearing someone shout that gang's name, Wolfe grabbed a

brick and threw it at the three men. Wolfe and his friend James then confronted the man in the hat, demanding that he straighten it. The man put his hand in his jacket pocket and replied "why don't you make me straighten my hat?" Wolfe and James returned to the other side of the street to the others, and Wolfe shouted "who ever has a gun shoot over his head because he has a gun; scare him off." Although defendant had a gun at that time, Wolfe did not see him fire it.

A jury found defendant guilty of murder, and the circuit court imposed the sentence noted above.

Defendant argues that two racial statements allegedly made by him were improperly introduced into evidence through the testimony of Anthony Keel.

■ Although defendant included this issue in his post-trial motion, he failed to object to the testimony at trial. Therefore, the issue is waived. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) We find no reason to excuse this waiver under the plain error rule. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

Defendant next claims that in light of the evidence, the State failed to prove him guilty of first degree murder beyond a reasonable doubt. A conviction will be upheld if, after viewing the evidence in the light most favorable to the prosecution, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) This case presents, at most, matters which are wholly within the province of the jury, not the appellate court. *People v. Sanchez* (1986), 115 Ill. 2d 238, 261, 503 N.E.2d 277, *cert. denied* (1987), 483 U.S. 1010, 97 L. Ed. 2d 745, 107 S. Ct. 3240.

Defendant asserts that, pursuant to section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 7—1), he used justifiable force to protect himself from Jefferson, whom he believed was armed with a gun.

■ Under section 7—1, the use of deadly force in self-defense is justified only when a person reasonably believes that such force is necessary to prevent imminent death or severe bodily harm. The defendant must present some evidence that force had been threatened against him; that defendant was not the aggressor; that danger of harm was imminent; that the force threatened was unlawful and that defendant actually believed the danger existed; that the kind

and amount of force was necessary to avert the danger; and defendant's belief was reasonable. (*People v. Krueger* (1994), 260 Ill. App. 3d 841, 845-46; *People v. Willis* (1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215, *appeal denied* (1991), 142 Ill. 2d 664, 584 N.E.2d 139.) In order to prove beyond a reasonable doubt that the defendant did not act in self-defense, the State must disprove at least one of the above factors. (*People v. Krueger*, 260 Ill. App. 3d at 846; *People v. White* (1980), 90 Ill. App. 3d 1067, 414 N.E.2d 196.) The existence of self-defense is a question of fact to be determined by the trier of fact. *People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.

■ Although the evidence presented here reveals that neither Rogers nor his friends verbally threatened defendant's group, the jury could have found that Jefferson's action of feigning possession of a weapon led defendant to believe he was in danger. However, the jury apparently discounted this version of events, and the record does not support a reversal of that finding by this court.

Alternatively, defendant argues that he satisfied his burden under section 9—2(a)(2) of the Criminal Code, which reduces a first degree murder conviction to second degree if the defendant can prove by a preponderance of the evidence that:

"(2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but the belief is unreasonable." (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(2).)

Krueger argues that he had an unreasonable belief that the use of force was justified under the circumstances testified to at trial.

■ The record reveals that defendant left the scene of the shooting only to return with a gun. If defendant had felt threatened by the victim and his friends, he should not have returned to the scene. Moreover, Jefferson did not threaten defendant and had removed his empty hand from his jacket pocket when defendant fired his weapon. For these reasons, we cannot reduce defendant's conviction to second degree murder.

Defendant further asserts that the Illinois second degree murder statute violates the Federal and State constitutional rights to due process.

■ The arguments advanced by defendant have been repeatedly rejected. (See *People v. De Oca* (1992), 238 Ill. App. 3d 362, 370, 606 N.E.2d 332, *appeal denied* (1993), 149 Ill. 2d 654, 612 N.E.2d 518; *People v. Collier* (1992), 228 Ill. App. 3d 159, 161, 592 N.E.2d 444, *appeal denied* (1992), 146 Ill. 2d 636, 602 N.E.2d 461; *People v. Guidry* (1991), 220 Ill. App. 3d 406, 581 N.E.2d 38.) We will not reconsider these prior rulings.

Defendant contends that his sentence was excessive. The State responds that defendant waived this issue because he failed to file a motion to reduce his sentence in the circuit court. Our supreme court recently held, however, that such a motion is not required to preserve alleged sentencing errors for review. *People v. Lewis* (1994), 158 Ill. 2d 386, 389-90.

Sentencing is discretionary with the circuit court and cannot be challenged on review absent an abuse of discretion. When the sentence is within the applicable statutory provisions, the circuit court is presumed to have imposed it properly. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Here, defendant's 50-year sentence is well within the range prescribed by the applicable section of the Unified Code of Corrections. See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1) (allowing 60-year maximum sentence).

■ Defendant maintains, however, that the trial judge failed to consider defendant's lack of a prior violent criminal history and his age. The record belies this argument. The trial judge noted defendant's age. He also properly took into consideration defendant's juvenile record of burglary and theft. Furthermore, he noted the senseless nature of the crime, which occurred on a busy Chicago street during the rush hour. In his opinion, this fact underscored the need for a sentence which would serve as a deterrent to other gang members in the neighborhood. We will not disturb the circuit court's sentence.

Accordingly, defendant's conviction and sentence are affirmed.

Affirmed.

BUCKLEY and MANNING, JJ., concur.