THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWARD JENNINGS, Defendant-Appellant.

Third District    No. 3—93—0256

Opinion filed December 22, 1994.—Rehearing denied February 1, 1995.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Clarke Erickson, State's Attorney, of Kankakee (John X. Breslin and Nancy Rink Carter, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

Defendant Edward Jennings was convicted of first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1) in the shooting of Carl Riley and of attempted murder (Ill. Rev. Stat. 1991, ch. 38, par. 8—4) and aggravated battery with a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.2) in the shooting of Bernard Grant. The trial court vacated the attempted murder conviction based on the prohibition against multiple convictions for a single physical act. (See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Defendant was sentenced to a 22-year term of imprisonment for murder and a concurrent six-year term for aggravated battery with a firearm. On appeal, defendant maintains that Riley's death was accidental or "at worst the product of a mere reckless act." Defendant also contends that his actions were justified on the basis of self-defense or were the result of an unreasonable belief in the need for self-defense. Finally, defendant argues that he is entitled to a new trial because he did not waive his right to a jury trial in writing as required by section 115—1 of the Code of Criminal Procedure of 1963 (the Code) (Ill. Rev. Stat. 1991, ch. 38, par. 115—1).

Deborah Sextion testified that at approximately 8:30 p.m. on June 8, 1992, she was watching a pick-up basketball game from her car at Washington Park in Kankakee. Sextion stated that she heard what sounded like firecrackers and saw people running off the court. Sextion then saw a person whom she identified as the defendant slipping or stumbling while at the same time firing a gun as he waved

it back and forth. According to Sextion, as her boyfriend, Darryl Williamson, got out of the car to confront defendant, Carl Riley, who had been standing nearby, grabbed his chest and fell into the car while spitting up blood. Williamson ran up to defendant yelling, "What the f- - - are you doing? Don't you see all these people out there?"

Phillip McCarty testified that he was among those playing basketball in Washington Park on the evening of June 8. McCarty stated that there were approximately 15 people and three or four cars in the immediate area. During the course of the game a player named Bernard Grant, whom McCarty described as 6 feet tall and weighing 175 to 180 pounds, argued with defendant. The record shows defendant was somewhere between 5 feet 5 inches and 5 feet 7 inches and weighed between 135 and 159 pounds. McCarty heard what sounded like a punch and saw that defendant had been knocked to the ground in a daze.

When defendant got up, he appeared to be "dizzy" and fell several times as he walked off the court toward a fence and a small bag. As defendant walked away, Grant threatened to hurt the defendant. When defendant got to the fence, he reached in the gym bag and pulled out what appeared to be a .22- or .25-caliber handgun. According to McCarty, everyone ran when they saw the gun and defendant then fired four shots toward Grant. McCarty admitted on cross-examination that in a statement he gave to police about a week after the shooting, he said that Grant and the others began to run after the defendant started shooting.

Eric Williams testified that he, too, was playing basketball in the park on June 8. Williams stated that during the course of the game Grant and the defendant argued over fouls. Williams heard a loud pop and saw Grant standing over the defendant. As the defendant tried to get up, Grant went towards him again yelling, "Round two, round two." According to Williams, the defendant stumbled and fell as he made his way off the court to a pouch or bag located nearby. Williams ran toward Riley's car and was trying to enter the car when he saw defendant coming onto the basketball court holding a gun. Defendant began shooting in Grant's direction as Grant ran away. On cross-examination, Williams agreed that defendant was "stumbling," "staggering" and "falling" as he fired the gun. Williams denied, however, that Grant was coming towards the defendant while he held the gun. According to Williams, by the time he first saw defendant with the gun, Grant had run off the basketball court and into the parking lot.

Chris Barnes testified that he was shooting baskets on the court

adjacent to the full-court game on the evening of June 8. Barnes saw Grant arguing with defendant on the other court. Barnes also saw the defendant take a gun from a small black bag located next to a fence by the tennis courts and shoot towards Grant, who was running away. Barnes saw defendant fire three shots and then fall to the ground with the gun in his hand. As defendant hit the ground the gun went off a fourth time, hitting Carl Riley. Barnes acknowledged that he could not, of course, see the bullet hit Riley, but Riley did not react or fall down until the fourth shot, which was fired as the defendant fell to the ground.

Bernard Grant testified that he was arguing with the defendant during the basketball game on June 8. Grant testified that he hit defendant with an open hand but he acknowledged signing a statement which indicated that he had punched the defendant. Grant stated that the force of the blow knocked the defendant to the ground, and when he got to his feet he was staggering and his eyes were glazed. As defendant walked towards the tennis court, Grant followed him saying, "Are you ready for round two?"

Grant stated that as defendant retreated he stumbled and fell several times. Grant testified that he stopped near the edge of the basketball court and watched the defendant as he pulled a handgun from a black bag. Grant turned and ran and he began to hear gunshots. Looking back as he ran, Grant saw that defendant was stumbling and staggering as he fired the gun. It was later determined that a bullet had grazed Grant's hip. Grant acknowledged telling the police that he saw Williamson slap defendant and take his gun, but he admitted that had not occurred. Grant also testified that he began running before the first shot was fired.

Officer Maurice Mietzner testified that he found two shell casings and a live round of .25-caliber ammunition on the basketball court. Mietzner did not, however, find a gym bag or a weapon.

Forensic pathologist Joseph Sapala testified that he performed an autopsy on Carl Riley on June 9. Sapala determined that Riley bled to death from a gunshot wound to his upper left chest area. The State's final witness, Doctor J. Michael Panuska, testified that he treated Bernard Grant for a gunshot wound to his hip on June 8. Panuska treated and released Grant without admitting him to the hospital.

The defendant testified that at approximately 5:30 p.m. on June 8 he was playing basketball at Washington Park. Bernard Grant became upset because he was not getting the ball and he resorted to calling traveling and double dribble violations. Defendant responded to Grant's conduct by saying, "Some of you all can't play ball good no

way [*sic*]." Grant responded to defendant's comment by saying, "Well, I can fight good [*sic*]" and punching defendant in the face.

Defendant testified that the force of Grant's punch knocked him down and knocked him out. According to defendant, when he awoke, he felt dazed and was unable to control his body. Defendant got up and twice asked Grant why he had hit him. Grant did not answer and came towards the defendant, who stumbled backwards looking for a brick or stick to defend himself. According to the defendant, he picked up an unzipped black bag, saw a gun inside, pulled it out and fired a shot at Grant, who was still advancing toward him. Grant turned and ran.

Defendant testified that although he only pulled the trigger once, the gun fired four times. Defendant fell forward after three shots and the fourth shot fired as he hit the ground. Defendant then stood up, Darryl Williamson approached and asked what he was doing, and defendant said, "I'm sorry." Defendant heard some screaming, dropped the gun and ran through a field, falling again as he ran. Defendant spent the night at a friend's house, called his mother the next morning, and turned himself in to police. Defendant stated that he never intended to kill or cause any harm to Carl Riley.

Bernard Grant testified in rebuttal that the black bag containing the gun was zipped. He stated that he saw the defendant fumbling with the zipper as he tried to unzip it.

As indicated above, defendant was convicted of first-degree murder, attempted murder, and aggravated battery with a firearm. The attempted murder conviction was vacated by the trial court. Defendant's post-trial motion was denied and this appeal followed.

We first consider defendant's contention that a new trial is required because he did not waive his right to a jury trial in writing as required by section 115—1 of the Code. That section states that "[a]ll prosecutions *** shall be tried by the court and a jury unless the defendant waives a jury trial *in writing*." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 115—1.) In *People v. Nuccio* (1994), 263 Ill. App. 3d 315, 636 N.E.2d 1154, the court reversed the defendant's conviction and remanded for a new trial due to a failure to comply with section 115—1. The *Nuccio* court held that "in order to understandingly waive his right to a jury trial, the defendant was required to execute a written jury waiver." *Nuccio*, 263 Ill. App. 3d at 317, 636 N.E.2d at 1156.

The State argues that *Nuccio* is distinguishable because in that case the defendant's attorney requested a bench trial when the defendant was not present in court and the defendant had previously demanded a jury trial. The defendant argued that he could not be

held to have acquiesced in a waiver made outside his presence, nor did he waive his right to a jury trial simply by remaining silent during trial. In contrast, the record reflects that the defendant in this case waived his right to a jury trial in open court:

"THE COURT: This is 92—CF—418, People of the State of Illinois vs. Edward Jennings. Defendant is present in custody and with Edward Glazar, Assistant Public Defender. State is here by Brenda Gorski, Assistant State's Attorney.

Case is called.

MR. GLAZAR: We are waiving our right to trial by jury and ask for a bench trial.

THE COURT: How old are you?

DEFENDANT: Twenty-two, sir.

THE COURT: You understand your lawyer tells me at this point you will give up your constitutional right to a trial by jury and ask the [c]ourt [to] try the case sitting without a jury and once you have done that you cannot change your mind about it. If you have a trial, it will be by this [c]ourt sitting without a jury?

DEFENDANT: Yes.

THE COURT: You understand all that?

DEFENDANT: Yes.

THE COURT: You have had time to talk to Mr. Glazar?

DEFENDANT: Yes.

THE COURT: It is still your decision to give up your right to a jury trial?

DEFENDANT: Yes.

THE COURT: Very well. Jury waived."

■ While we agree that it is clear in this case that the defendant knowingly waived his right to a jury, the fact remains that no *written* waiver was obtained. Section 115—1 unequivocally requires such a waiver, and we are not free to ignore the plain language of the statute, whatever our opinion of its wisdom might be. Nor can we accept the State's argument that defendant has waived this issue by failing to object at trial and by failing to raise it in his post-trial motion. Supreme Court Rule 615(a) provides that "defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (134 Ill. 2d R. 615(a); *People v. Hall* (1991), 221 Ill. App. 3d 864, 583 N.E.2d 54.) The right to a jury trial is a substantial right, and issues regarding the waiver of that right should be considered even when not properly preserved. *People v. Watson* (1993), 246 Ill. App. 3d 548, 616 N.E.2d 649.

The State also argues that section 115—1 of the Code is unconstitutional. Specifically, it contends that section 115—1 violates the separation of powers clause of the Illinois Constitution because it

infringes on the power of the judiciary. The separation of powers clause provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers belonging to another." (Ill. Const. 1970, art. II, § 1.) In addition, article VI, section 16, states that general administrative and supervisory authority over the courts is vested in the supreme court. (Ill. Const. 1970, art. VI, § 16.) However, since each branch of the government is not required to exercise its powers in complete isolation of the other two branches, the separation of powers doctrine contemplates a government of separate branches having certain shared or overlapping powers. (*People v. Walker* (1988), 119 Ill. 2d 465, 519 N.E.2d 890.) Specifically, our supreme court has held that the legislature has the power to enact laws concerning judicial practice which do not unduly infringe on the inherent powers of the judiciary (*People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059), or conflict with a supreme court rule (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541).

The State contends that the manner in which a jury waiver is effected "is a matter of practice and procedure within the court system, and is therefore judicial." We disagree.

■ Trial by jury is guaranteed by article I, sections 8 and 13, of the Illinois Constitution. (Ill. Const. 1970, art. I, §§ 8, 13.) Section 115—1 merely insures that a defendant will not relinquish his right to a jury trial without signing a written waiver. (Ill. Rev. Stat. 1991, ch. 38, par. 115—1.) Therefore, the purpose of section 115—1 is to effectuate the constitutional right to a jury trial. (725 ILCS Ann. 5/115—1, Committee Comments—1963, at 3 (Smith-Hurd 1992).) That right carries with it the defendant's personal right to waive a jury trial (*People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 533 N.E.2d 873; see also *People v. Gersch* (1990), 135 Ill. 2d 384, 553 N.E.2d 281), and statutes implementing that right do not violate the separation of powers doctrine (see *People v. Spegal* (1955), 5 Ill. 2d 211, 125 N.E.2d 468, *overruling People v. Scott* (1943), 383 Ill. 122, 48 N.E.2d 530). In *Scott* the supreme court held that a statute which gave a defendant the right to waive a jury trial violated Illinois constitutional separation of powers principles. *Spegal* overruled *Scott*, stating that there was no inherent power in the judiciary "to override the determination of the legislature as to the method of trial to be employed where a jury trial is not required by the constitution." (*Spegal*, 5 Ill. 2d at 220.) Similarly, we find no inherent power in the judiciary to override a legislative determination of the method of waiving the right to a jury trial. We further find that, although certain supreme court rules govern a defendant's waiver of rights (see, *e.g.*, 134 Ill. 2d R. 401 (waiver of counsel); 134 Ill. 2d R. 402 (guilty pleas)), no rule

directly conflicts with the written jury waiver requirement of section 115—1. We therefore conclude that section 115—1 does not violate the separation of powers clause of the Illinois Constitution.

Although we are reversing defendant's conviction for failure to comply with section 115—1, we must nevertheless consider defendant's challenge to the sufficiency of the evidence to avoid the risk of subjecting him to double jeopardy. (See *People v. Taylor* (1976), 76 Ill. 2d 289, 391 N.E.2d 366.) Defendant contends that the evidence established that the shooting of Riley was accidental, or was at worst the result of a reckless act. Defendant argues that he was so dazed by Grant's punch that he stumbled and staggered as he retreated, found the gun, and fired the shots. Defendant also notes that Chris Barnes testified that the fourth shot that struck Riley occurred when defendant fell to the ground. Defendant maintains that under those circumstances, no rational trier of fact could have found the necessary intent element to support a conviction for first degree murder. We disagree.

Defendant was charged and convicted of first degree murder in violation of section 9—1(a)(2) of the Criminal Code of 1961 (the Criminal Code), which states in part:

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

\*\*\*

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another." Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(2).

To prove murder, it is not necessary to show that the defendant had a specific intent to kill or do great bodily harm, or that he knew with certainty that his acts would achieve those results; the State need only prove that the defendant voluntarily and wilfully committed an act which had the natural tendency to take another's life or inflict great bodily harm. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59; *People v. Szerletich* (1980), 86 Ill. App. 3d 1121, 408 N.E.2d 1098.) Intent can be inferred from the character of the act, including the fact that the defendant used a deadly weapon. (*People v. Gross* (1988), 166 Ill. App. 3d 413, 519 N.E.2d 1043.) The issue of intent, including whether the defendant is guilty of murder because his acts created a strong probability of death or great bodily harm, or whether he is instead guilty of involuntary manslaughter because his acts were merely reckless, is a question of fact for the trier of fact; its finding will not be disturbed unless it is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *Bartall*, 98 Ill. 2d 294, 456 N.E.2d 59.

In *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829, the defendant was convicted of murder despite his testimony that he had accidentally killed the victims when he shot in their direction while fleeing from a group of rival gang members. In affirming the defendant's conviction, the supreme court observed that the defendant "intended to fire the gun and did in fact point it and shoot it in the decedents' general direction. This act, done voluntarily and wilfully, is sufficient evidence of the intent requisite to constitute the offense of murder." *Cannon*, 49 Ill. 2d at 166.

■ In this case, all of the witnesses, including the defendant, agreed that defendant pulled a gun from the gym bag and began firing in Grant's direction. This constituted sufficient evidence that defendant wilfully committed an act which had the natural tendency to take a life or inflict great bodily harm, notwithstanding the evidence that the final shot was fired as defendant fell to the ground.

Defendant also contends that his use of force was justifiable or, alternatively, that his belief in the need for deadly force was such that his conviction should be reduced to second degree murder. We disagree.

The elements justifying the use of force in defense of a person are:

> "(1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. Furthermore, the use of deadly force is limited to those situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony." *People v. Stokes* (1989), 185 Ill. App. 3d 643, 655-56, 541 N.E.2d 1129, 1137.

Once the defendant has presented some evidence of these elements, the State has the burden of proving that the defendant's use of force was not justifiable. (*People v. Harris* (1992), 228 Ill. App. 3d 204, 592 N.E.2d 533; *People v. Willis* (1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215.) That burden is met if the State is able to negate any one of the self-defense elements beyond a reasonable doubt. (*People v. De Oca* (1992), 238 Ill. App. 3d 362, 606 N.E.2d 332; *Willis*, 217 Ill. App. 3d 909, 577 N.E.2d 1215.) The issue of self-defense is a factual matter; it is the role of the trier of fact to determine the credibility of the witnesses, to draw reasonable inferences from the testimony, and to resolve conflicts in the evidence, and those

determinations will not be disturbed unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *De Oca*, 238 Ill. App. 3d 362, 606 N.E.2d 332; *Willis*, 217 Ill. App. 3d 909, 577 N.E.2d 1215.

■ After viewing the evidence in a light most favorable to the prosecution, it is clear that the trial court's rejection of defendant's claim of self-defense was supported by the evidence. Only the defendant testified that Grant was advancing toward him when he began firing the gun. Phillip McCarty, Eric Williams and Grant each testified that Grant was running away when the shots were fired. The right of self-defense does not justify an act of revenge or retaliation. (*People v. Everette* (1990), 141 Ill. 2d 147, 565 N.E.2d 1295.) The trial court found that "Grant was in full flight when the shots were fired," and that finding is supported by the evidence. We hold, therefore, that the State proved that defendant's use of force was not justifiable, and the defendant failed to prove by a preponderance of the evidence that he acted unreasonably in self-defense. (*Cf. People v. Huddleston* (1993), 243 Ill. App. 3d 1012, 614 N.E.2d 86.) We emphasize that our findings with regard to the sufficiency of the evidence are not a determination of guilt for the purposes of retrial; they are only to avoid the risk of double jeopardy. (See *Taylor*, 76 Ill. 2d 289, 391 N.E.2d 366.) If he should choose to do so and if warranted by the evidence, the defendant is not precluded from asserting upon retrial that his acts were accidental, reckless, justifiable, or the result of an unreasonable belief in the need for self-defense.

For the reasons stated above, the judgment of the circuit court is reversed and remanded for a new trial.

Reversed and remanded.

LYTTON and STOUDER, JJ., concur.