2025 IL App (1st) 240239-U
Order filed: June 5, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-0239

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 13345 |
| | ) | |
| EDWARD TAYLOR, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for aggravated battery is affirmed, where he did not demonstrate plain error resulting from any possible error in the instructions provided to the jury or in the fact that only 11 of 12 jurors were polled as to their verdict.

¶ 2    Defendant-appellant, Edward Taylor, appeals from his conviction for aggravated battery, asserting on appeal that the trial court committed plain error by improperly instructing the jury and by failing to poll one of the jurors as to the final verdict. For the following reasons, we affirm.

¶ 3    In December 2022, defendant was charged by indictment with one count each of aggravated domestic battery, aggravated battery, and domestic battery, with all the charges arising from a November 12, 2022, incident involving the alleged victim, Sequila Davis. The matter

proceeded to a jury trial held in November 2023, on one count each of aggravated domestic battery and aggravated battery.

¶ 4     At trial, the State presented testimony from Davis, Officer Scottrika Davis Hillie, and Detective David Scarriot. Davis testified that she was 34 years old and in November of 2022, she lived in an apartment in Chicago, Illinois with defendant, the father of two of her four children. All four of her children lived in the apartment with them. On November 11, 2022, defendant arrived at the residence at around 6:00 p.m., at which point he was acting "normal." After 15 or 30 minutes, defendant left and returned two times and upon returning each time he was acting "real aggressive, yelling, falling over, shaking," and was cursing and threatening Davis. Davis brought all her children into one bedroom with her and defendant stood next to the door of that bedroom yelling at the children, saying to them, "I'm going to beat your ass." Davis testified that at some point during the altercation she instructed her youngest son to curse at defendant, and in response defendant hit her son. Davis then took mace out from underneath a mattress and sprayed mace at defendant. When defendant went to the bathroom to clean his eyes, she left the apartment with the mace, a bottle of liquor, and a kitchen knife for protection.

¶ 5     Davis was wearing only her pajamas at the time, and thereafter she had her daughter pass her some clothes and defendant's cell phone out of a window. She stayed outside for some time hoping defendant would calm down before she returned. Davis admitted "sipping" some of the liquor during this time but denied being intoxicated.

¶ 6     Eventually, Davis returned to the apartment and decided to climb in through a first-floor window; her plan was to enter quietly, lay down, and "hopefully, everything was going to be okay." She testified that when she was coming in through the window, she did not have the knife nor the can of mace in her hands. When she made it back inside the residence, she saw defendant walking

fast towards her, and defendant was the first one to make physical contact. Defendant grabbed her, began punching her and telling her he was going to kill her. Defendant held Davis by the jacket and during the altercation, the knife she had brought with her fell out of her pocket. Defendant then stabbed her under her right shoulder blade. Davis fell to the floor and was losing her breath.

¶ 7    Davis made her way outside and a man stopped to help her. At some point, defendant also came outside still holding the knife. A firetruck, an ambulance and the police arrived, and Davis told the police that defendant stabbed her. Davis was transported to a hospital and required stitches. There she was again questioned by the police.

¶ 8    Davis also testified that on November 4, 2019, defendant punched Davis in her forehead, near her eye, causing a knot to form which caused her eye to be swollen shut. Defendant also hit her daughter.

¶ 9    Officer Hillie testified that she has been a Chicago Police Officer for almost two years, and she was working as a beat officer on November 12, 2022. She responded to a call of a "domestic situation" in the early morning hours, around 4:00 a.m. Upon her arrival, she found Davis sitting down and defendant "standing there just rambling." Officer Davis Hillie's partner put the offender in handcuffs and during the investigation the police recovered a knife. Officer Davis Hillie's uniform was equipped with body worn camera ("BWC"), and video from that camera was entered into evidence and played for the jury. The video shows that a male officer recovered a hunting-type knife with a blade several inches long and an inch wide with a dark handle. As that male officer is handing the recovered knife to Officer Hillie, defendant can be seen and heard saying "that's my knife, I stabbed her with it."

¶ 10    Detective Scarriot testified that he's been a detective for the Chicago Police Department for ten years. On November 12, 2022, he was assigned to this case and went to Christ Hospital

with his partner, Detective Kerlin, to interview Davis. Davis had a stab wound on her back from a knife. Detective Scarriot interviewed Davis, took photographs of Davis's clothing and bandaged wound, and subsequently took photographs inside the apartment.

¶ 11    A stipulation to defendant's prior domestic battery conviction from 2019 was entered into evidence, which read that defendant "has been previously convicted of the offense of domestic battery, bodily harm, under Illinois Case No. 19DV7711801." The prosecution rested, and defendant's motion for a directed finding was denied.

¶ 12    Defendant testified that he was 59 years old, and in November of 2022, he lived in Chicago with Davis and their children. On November 11, 2022, he returned home from work, took a shower, then left and went to a liquor store. When he returned home again, he began to drink Hennessy. At some point he went to pour a drink from the bottle of Hennessy, but the bottle wasn't where he left it. He went to confront Davis about the alcohol and as he got close to her, "she pepper sprayed me with mace for no reason." Defendant testified that Davis said nothing to him before spraying him with mace, and after being maced he ran into the bathroom to wipe his face. Defendant then left the residence and ran down the street to a fire station to ask for help, but he received no assistance.

¶ 13    He returned home, and Davis was gone. Defendant then sat down on a bed to relax and watch television. Defendant testified that, hours later, while he was in his bedroom, he "realized" someone was coming through the window, but when he got to the living room, he didn't see anyone coming through the window. Rather, defendant saw Davis in the living room, "two steps from the window, maybe three." He ran into the room, approached Davis, and asked her for his phone and alcohol, and she then maced him again. Defendant testified that, "[s]he pepper sprayed me and I stabbed her." Davis ran out of the apartment and defendant chased her. He found her outside on the corner with a neighbor, then an ambulance pulled up.

¶ 14    On cross-examination, defendant testified that he didn't really slap his son during the earlier altercation, he was merely walking to the bathroom and swinging his arms because he was in a rush to clean his face and his arms hit his son. Defendant testified that when Davis came back to the residence and he saw her in the living room, she was holding the bottle of alcohol and the knife both in her right hand and the mace in her left hand. He later testified that when he approached her in the living room, he was holding his own knife, and that it was open and unfolded. Defendant denied hitting Davis during the incident, he only stabbed her. Defendant was still carrying the knife when he followed Davis outside after he stabbed her, and when police arrived, he identified the same knife he carried outside as the one he used to stab Davis.

¶ 15    After the close of evidence, the trial court held a jury instructions conference, at which the parties and the court discussed the need for a modified version of Illinois Pattern Jury Instructions, Criminal, No. 3.14 (approved October 17, 2014) (hereafter IPI Criminal 3.14), which addresses the proper use of evidence of other crimes. The State asked for IPI Criminal 3.14 to be given, stating that the other crimes evidence was to be considered for the limited purpose of propensity. In contrast, the trial court pointed out that the statutes permitting the introduction of other crimes evidence in domestic violence cases (725 ILCS 5/115-7.4 (West 2020) and 725 ILCS 5/115-20 (West 2022)), do not limit consideration of the evidence to only propensity.

¶ 16    The court then proposed a modified version of IPI Criminal 3.14. The modified instruction proposed by the court read "[e]vidence has been received that the defendant has been involved in an offense other than that charged in the indictment. It is for you to determine what weight should be given to that evidence." The court informed the parties that with this modified instruction, "[i]t's for you, for both sides, frankly, to argue what weight should be given." When defense counsel were asked if there was anything they wanted to say on the issue, counsel responded, "Judge, we

would ask for the modified 3.14 that you tendered to us." The State did not object to the modified IPI Criminal 3.14 being given to the jury. The parties then gave their closing arguments, the trial court provided instructions, and the jury retired to deliberate.

¶ 17 The jury ultimately found defendant guilty of aggravated battery and not guilty of aggravated domestic battery. Following the reading of the verdict, defense counsel requested that the jury be polled. The court clerk proceeded to poll only 11 members of the 12-person jury, The court denied defendant's motion to set aside the jury's verdict or in the alternative for a new trial. Defendant was thereafter sentenced to three and a half years' imprisonment. Defendant's motion to reconsider was denied, and he timely appealed.

¶ 18 On appeal, defendant first contends that the trial court improperly provided the jury with a modified IPI Criminal 3.14 jury instruction with respect to the evidence of his prior conviction. Specifically, defendant contends that giving this modified instruction was superfluous, unduly emphasized this particular evidence, and did not exactly track the language of the statutes permitting the introduction of other crimes evidence in domestic violence cases.

¶ 19 Acknowledging that he failed to preserve this issue with an objection at trial and by raising it in his posttrial motion, defendant asks this court to review it for plan error. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion). In turn, the State contends that because defendant actually agreed with this jury instruction below, we should decline his request for plain error review under the doctrines of estoppel or invited error. We conclude that even overlooking any issues of estoppel or invited error, defendant has not demonstrated plain error.

¶ 20 The plain error doctrine "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error." *People v. Herron*, 215 Ill. 2d 167, 186 (2005). The plain-

error doctrine is applied where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In either circumstance, the burden of persuasion remains with the defendant. *Herron*, 215 Ill. 2d at 182.

¶ 21   Defendant only asserts plain error under the first prong of the plain-error doctrine. Generally, the first step in plain error review is to determine whether a clear and obvious error occurred. *People v. Jackson*, 2022 IL 127256, ¶ 21. If, however, we determine that the evidence was not closely balanced, we need not determine whether the trial court erred. See *People v. Hood*, 2022 IL App (4th) 200260, ¶ 123. Here, even assuming *arguendo* that the trial court erred, we find the error did not amount to plain error under the first prong of the analysis. To prove first prong plain error, defendant must prove " 'prejudicial error'," *i.e.*, that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. *People v. Adams*, 2012 IL 111168, ¶ 21 (quoting *Herron*, 215 Ill. 2d at 187). In determining whether this prong has been met, we must make a " 'commonsense assessment' " of the evidence within the context of the circumstances of this case. *Id*. ¶ 22 (quoting *People v. White*, 2011 IL 109689, ¶ 139).

¶ 22   Defendant was convicted of aggravated battery under subsection 12–3.05(f)(1) of the Criminal Code of 2012  (720 ILCS 5/12–3.05(f)(1) (West 2022)), which occurs when, while committing a battery, the defendant "[u]ses a deadly weapon other than by discharge of a firearm, or uses an air rifle" In turn, a battery occurs when the defendant "knowingly without legal

justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12–3(a) (West 2022). Both below and on appeal, defendant admits to having stabbed Davis with a deadly weapon and has only challenged the State's evidence as to his lack of legal justification by asserting that he acted in self-defense. Thus, on appeal the issue is the closeness of the evidence with respect to his claim of self-defense.

¶ 23    As our supreme court has recognized:

"Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense, in addition to proving the elements of the charged offense. [Citation.] The elements of self-defense are: (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable. [Citations.] If the State negates any one of these elements, the defendant's claim of self-defense must fail." *People v. Lee*, 213 Ill. 2d 218, 224–25 (2004).

¶ 24    Because a defendant claiming this defense may not be the aggressor, it is well recognized that a nonaggressor has a duty not to become the aggressor, and a person may not provoke the use of force and then retaliate claiming self-defense. *People v. Heaton*, 256 Ill. App. 3d 251, 257 (1994). Furthermore, the right of self-defense does not justify harming an original aggressor after the aggressor abandons a quarrel or as an act of retaliation and revenge. *People v. De Oca*, 238 Ill.

App. 3d 362, 368 (1992) (citing *People v. Thornton*, 26 Ill. 2d 218, 222 (1962), and *People v. Huddleston*, 176 Ill. App. 3d 18 (1988)).

¶ 25    On the evidence presented below, defendant has not met his burden to show that the evidence that he stabbed Davis in self-defense was closely balanced. At trial, Davis testified that defendant approached, attacked and stabbed her without warning as she entered through the apartment window. More importantly, defendant himself admitted that when Davis returned to the apartment, he "ran" into the living room with a knife in his hand and physically approached Davis while holding the knife to demand the return of his phone and alcohol. It was only thereafter that Davis purportedly maced defendant a second time and defendant then stabbed her. As noted above, defendant cannot claim self-defense if he was the aggressor and he may not provoke the use of force and then retaliate claiming self-defense. On the evidence presented at trial, the evidence as to defendant's claim of self-defense was not closely balanced and we therefore reject his request for plain error review of the jury instruction issue.

¶ 26    Next, and once again acknowledging that this issue was not properly preserved below, defendant asserts that the trial court committed plain error when only 11 members of the 12-person jury were polled as to the final verdict. The State concedes error as to this issue but, noting that defendant once again only asserts first-prong plain error, asks this court to affirm on the same basis as above. We agree with the State that, as discussed above, defendant has not demonstrated first-prong plain error considering the evidence presented at trial. Therefore, we reject defendant's invocation of plain error as to this issue and find no reversible error.

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 28    Affirmed.